**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **LIBERTY MUTUAL INSURANCE COMPANY,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 06 C 6689 |
| **LUMBERMENS MUTUAL CASUALTY COMPANY, et al.,** | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

On December 4, 2006, Liberty Mutual Insurance Company brought this equitable contribution action to recover a portion of the costs it incurred to defend its insured, Sears, Roebuck and Company ("Sears"), against class action lawsuits brought in California and Illinois.[1] On December 20, 2007, Liberty Mutual Fire Insurance Company ("Liberty") was substituted as the plaintiff. Defendant Lumbermens Mutual Casualty Company ("Lumbermens") has moved for summary judgment, in whole or in part, on the ground that Liberty's claim is time-barred, and further argues that Liberty lacks standing. For the reasons discussed below, Lumbermens' motion is denied.

---

[1] Liberty originally sought contribution, in an alternative count, from Sears. By Order of July 26, 2007, I dismissed Liberty's claim against Sears. *Liberty Mut. Ins. Co. v. Lumbermens Mut. Cas. Co.*, 525 F.Supp.2d 993 (N.D. Ill. 2007). The individual defendants were dismissed with prejudice by stipulation on January 18, 2008.

I.

At times relevant to this lawsuit, Liberty and Lumbermens (sometimes referred to as "Kemper"[2]) were general insurers of Sears. Sears held Lumbermens general liability policies prior to October 1, 1997, and it held Liberty general liability policies with various coverage periods beginning on or after October 1, 1997. In 1999, Sears was sued in class actions in California (the "UCAN action") and Illinois (the "Bovay," "Triezenberg," and "Clark" actions, collectively, the "Illinois actions"). The class action complaints alleged wrongful conduct both before and after October 1, 1997.

Sears apparently tendered the UCAN and Illinois actions to both Liberty and Lumbermens. Both insurers responded with letters stating their positions regarding coverage for defense and liability. Liberty agreed to defend Sears in all four lawsuits, subject to certain reservations. Because the class actions against Sears alleged conduct that preceded the Liberty policy periods, however, Liberty also requested that Sears inform its prior carrier of the actions in order to share the cost of Sears' defense. Lumbermens, for its part, indicated in "reservation of rights" letters (which Liberty sometimes refers to as "coverage position"

---

[2]The relationship between Lumbermens and Kemper is not at issue, and the pleadings and record refer to Kempers and Lumbermens interchangeably. For consistency, I refer only to Lumbermens, except where quoting from portions of the record referring to Kemper.

letters) that it would defend and/or indemnify Sears, subject to certain conditions and restrictions. Lumbermens' position has evolved over time, however, and it was murky, at best, for a considerable period.

In fact, it is not clear at what point Liberty became aware that Lumbermens was Sears' prior insurance carrier. Some evidence suggests that as late as January of 2003, Liberty still did not know the identity of Sears' previous insurer.[3] (Rouillard Aff., Exh. D.) It appears, however, that at least by June of 2003, Liberty had become aware that Sears was insured by Lumbermens, and that by July 2003, Liberty expected that Liberty, Lumbermens, and Sears would each contribute one-third of the settlement costs in the UCAN and Illinois actions. (Rouillard Aff., Exh. G.) The basis for that expectation, though, is not apparent from the record.

The parties do not dispute that Liberty first received copies of Lumbermens' reservation of rights letters on July 6, 2006. The letters themselves are dated April 24, 2000 (relating to UCAN), August 1, 2002 (Triezenberg), August 19, 2002 (Bovay), July 10, 2003 (Clark), and July 10, 2003 (UCAN). (Rouillard Aff. Exhs. T-X) Other than these letters, and Liberty's own coverage position letters to Sears, the record is composed primarily of

---

[3]This is one reasonable way--though not the only one--to interpret the January 23, 2003 letter from Liberty to Sears, requesting that Sears place "its prior carrier" on notice, and ask "the prior carrier" to contact Liberty regarding cost sharing. Later, Liberty referred expressly to "Kemper" (evidently a company related to Lumbermens).

3

correspondence between Liberty and Sears regarding the defense and settlement of the UCAN and Illinois actions. Although that correspondence is peppered with Liberty's requests for Lumbermens' coverage position, nothing in the record makes any representations about Lumbermens' coverage position. Indeed, Liberty's requests were apparently met either with silence from Sears, with excuses for why no substantive response was forthcoming (that Sears could not identify a contact at Lumbermens (Rouillard Aff. Exh. N)), or with misinformation (that Sears had not actually received coverage position letters from Lumbermens (Rouillard Aff. Exh. I)). Occasionally, the correspondence between Liberty and Sears bears a "cc" to Lumbermens, (e.g., Rouillard Aff. Exhs. F, G), but there is no evidence that Lumbermens received or responded to the messages on which it was copied. Other than these "cc"s, there is no evidence that Liberty attempted to obtain Lumbermens' coverage position letters directly from Lumbermens.

By March of 2005, Sears threw up its hands and told Liberty that if it wanted to obtain contribution from Lumbermens for defense costs, it would have to initiate litigation against Lumbermens. (Rouillard Aff. Exh. N) In August of 2005, however, Sears informed Liberty that the Lumbermens policies had been "novated," that "now Sears stands in Kemper's shoes," and that it would be "between Liberty and Sears" to resolve the matter of contribution. (Rouillard Aff. Exh. O)

The parties do not dispute that it was Liberty who defended Sears in the UCAN and Illinois actions, or that Liberty incurred defense fees and costs in excess of $1,500,000. The parties also agree that Liberty contributed $525,000 to the settlement of the UCAN lawsuit. It is not clear whether Lumbermens also paid a portion of the UCAN settlement, though a reasonable interpretation of some evidence in the record (e.g., Rouillard Aff. Exh. G) is that Lumbermens did do so. As far as the record shows, the Illinois actions have been consolidated but have not yet been resolved.

## II.

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(e). It is not the court's function, at the summary judgment stage, to weigh the evidence and decide on the merits, but rather to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). I must construe the evidence in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences that party's favor. *Id.*, at 255. Nevertheless, the nonmovant must present sufficient evidence to enable a reasonable fact finder to find in his or her favor, and

5

merely "a scintilla of evidence" is not enough to avoid summary judgment. *Anderson*, at 252.

Actions for equitable contribution under Illinois law are subject to a two year statute of limitations. 735 ILCS 13/204 ("Section 204"). The moment at which the limitations period begins to run depends on the circumstances of the action. The statute identifies two separate scenarios in which claims for contribution may be brought, and it identifies the relevant limitations triggers under each. Paragraph (a) of Section 204 states:

> In instances where no underlying action seeking recovery for injury to or death of a person or injury or damage to property has been filed by a claimant, no action for contribution or indemnity may be commenced with respect to any payment made to that claimant more than 2 years after the party seeking contribution or indemnity has made the payment in discharge of his or her liability to the claimant.

And paragraph (b) provides:

> In instances where an underlying action has been filed by a claimant, no action for contribution or indemnity may be commenced more than 2 years after the party seeking contribution or indemnity has been served with process in the underlying action or more than 2 years from the time the party, or his or her privy, knew or should reasonably have known of an act or omission giving rise to the action for contribution or indemnity, whichever period expires later.

The statute of limitations thus draws a line in the sand between claims in which "an underlying action" has been filed, and those in which one has not.

III.

A. Statute of Limitations

The parties dispute whether this case falls on one side or the other of that line. Lumbermens contends that no "underlying action" exists because Sears did not sue its insurers to recover its defense costs. Accordingly, Lumbermens argues that paragraph (a) governs, and the two-year limitations period began with respect to each payment Liberty made for Sears' defense on the date that the payment was made. Lumbermens cites *American Alliance Ins. Co. v. IARW Ins. Co.*, Ltd., 165 F.3d 558 (7th Cir. 1999), which held that pursuant to Section 204, an insurer's equitable contribution claim against a co-insurer was timely when brought within two years after the insurer seeking recovery paid for the loss of the co-insured. Lumbermens thus seeks to bar Liberty's claim for any payment Liberty made before December 27, 2005, or two years prior to the date Liberty was substituted for the original plaintiff in this action.[4]

Liberty, on the other hand, asserts that the UCAN and Illinois actions constitute "underlying actions" for the purposes of the statute. Liberty thus urges me to apply paragraph (b) and to find that the limitations period began to run only in July of 2006, when

---

[4]Lumbermens argues in the alternative that if I find the amended complaint relates back to the original complaint, payments before December 4, 2004 should be barred. Because I find that July 6, 2006 is the applicable trigger for the limitations period, I find all of plaintiff's claims timely in any event.

7

Liberty discovered that Lumbermens had a co-duty with Liberty to defend Sears.  Liberty argues that the holding in *American Alliance* is of no help to Lumbermens, since in that case, the issue was not whether paragraph (a) or (b) of Section 204 applied, but instead whether a shorter contractual limitations period applied in lieu of the statutory period.

Neither party cites to any authority in support of its construction of the statutory phrase "an underlying action." Lumbermens' interpretation is superficially appealing because the statute refers to "an underlying action" filed by a "claimant," and in the insurance context, of course, a party who seeks to recover from its insurer is commonly referred to as a "claimant." Indeed, Sears became a "claimant" under its insurance policies when it tendered the UCAN and Illinois actions to its insurers under those policies, and Lumbermens argues that Sears is therefore the "claimant" to which Section 204 refers.  Because Sears never filed a lawsuit to recover from its insurers, so the argument goes, there was no "underlying action" by a "claimant."

Upon examination, however, Lumbermens' interpretation fails. Section 204 applies to contribution and indemnity claims generally, not just to claims among co-insurers, and courts applying the statute have not interpreted its use of the term "claimant" as narrowly as that term is used in the insurance context.  Indeed, the majority of cases interpreting Section 204 are not insurance

cases at all, but rather cases in which an injured party (i.e., a "claimant") seeks redress from a defendant who later files a contribution or indemnity claim against a third party. In such cases, the phrase "underlying action" is used to distinguish the original claim from the third-party contribution claim.

*American Alliance*, the only case to apply Section 204 in the context of an equitable contribution claim between co-insurers, did not address the issue of what may be considered an "underlying action" for the purposes of determining which of the statute's subsections applies. Nevertheless, Illinois courts have used the phrase "underlying action" in equitable contribution cases among co-insurers to refer to litigation against the co-insurers' insured. *See, e.g., Cincinnati Companies v. West American Ins. Co.*, 287 Ill.App.3d 505, 679 N.E.2d 91 (2nd Dist. 1997). Accordingly, the UCAN and Illinois cases may appropriately be considered "underlying actions," opening the door for Liberty to avail itself of the discovery rule set forth in Section 204(b).

Having determined that the discovery rule of Section 204(b) is available to Liberty, it is only a short step to the conclusion that Lumbermens is not entitled to summary judgment. The question of when a party seeking contribution has sufficient knowledge to trigger the limitations period is ordinarily a question of fact for the jury. *Brdar v. Cottrell, Inc.*, 372 Ill.App.3d 690, 705, 867 N.E.2d 1085, 1100 (5th Dist. 2007)(*citing Knox College v. Celotex*

9

*Corp.*, 88 Il.2d 407, 416, 430 N.E.2d 976, 980-81 (1981)).  I may not grant summary judgment unless it is apparent from undisputed facts that Liberty reasonably should have known that it had a contribution claim against Lumbermens more than two years before it filed its complaint.  *See Brdar*, at 705, 1100.

As noted above, the record leaves many questions unanswered as to what Liberty knew about Lumbermens' position regarding coverage for the UCAN and Illinois actions.  The only reasonably clear inference from the undisputed facts is that Liberty expected in July 2003 that Lumbermens would contribute to the UCAN settlement.  This is insufficient to apprise Liberty of its entitlement to contribution from Lumbermens.  Equitable contribution is only available where different policies insure the same entities, the same interests, and the same risks.  *Home Ins. Co. v. Cincinnati Ins. Co.*, 213 Ill.2d 307, 316, 821 N.E.2d 269, 276 (2004).  While it may not, in every case, be necessary for an insurer in Liberty's position to receive a copy of a co-insurer's "reservation of rights" letter to become reasonably aware that it has a claim for equitable contribution, the record in this case suggests that until Liberty actually received Lumbermens' letters, it was unable to obtain sufficient information to assert its claim.

While it is true that, in retrospect, Liberty might have been well-advised to contact Lumbermens directly to try to obtain the coverage position letters it had fruitlessly sought from Sears, my

overall impression from the record is that Liberty sought to resolve the matter without hasty resort to litigation, and that it took reasonable steps to that end by attempting to obtain from its insured the information it needed about potential co-insurers. Lumbermens emphasizes that at least by March 2005, when Sears told Liberty that it would have to pursue Lumbermens directly, Liberty should have known its attempts to obtain further information from Sears were futile. But just 5 months later, Sears changed course, telling Liberty that it was between Sears and Liberty to resolve the contribution claim. To foreclose Liberty's ability now to resort to litigation, as a consequence of what appears to be Sears' and/or Lumbermens' pre-litigation recalcitrance seems to me an inequitable result.

Because I find that Liberty knew or should reasonably have known of its contribution claim only as of July 6, 2006, its action is timely regardless of whether it is considered to have been filed on December 27, 2007, or December 4, 2006. Accordingly, I need not decide whether Liberty's amended complaint relates back to the original complaint.

### B. Standing

Although Lumbermens' motion is based only on the statute of limitations, in reply Lumbermens additionally argues that I should grant summary judgment because Liberty lacks standing to assert its claim. Relying on *DePuy, Inc., v. Zimmer Holdings, Inc.*, 384

11

F.Supp.2d 1237, 1238-40 (N.D. Ill. 2005), Lumbermens argues that because the previously named plaintiff, Liberty Mutual Insurance Company, and not the current plaintiff, Liberty Mutual Fire Insurance, actually paid the costs for which Liberty seeks contribution, Liberty has suffered no injury and thus lacks standing. But *DePuy* is distinguishable because the injury asserted in that case--a patent infringement suit--is defined by the statutory scheme particular to patent law. In *DePuy,* the court held that the corporate parent of a patent owner lacked standing to assert a claim of patent infringement. The court reasoned that because patent infringement is a statutory tort, only the parties that the statute defines as having a legally cognizable interest in the patent (i.e., the patent owner or an exclusive licensees) have standing to enforce it through an infringement action.

In this case, Lumbermens does not point to any statute or other source of law that would preclude Liberty from asserting an equitable contribution action, provided Liberty can establish the elements of its claim. Liberty has alleged that it has paid the defense fees and expenses for the UCAN and Illinois actions. In its opposition to summary judgment, Liberty states that it is part of the "Liberty Mutual insurance pool" and that Liberty Mutual Insurance Company made Sears' defense payments on Liberty's behalf. There is no doubt that Liberty will ultimately have to establish that it paid--through Liberty Mutual Insurance Company or

12

otherwise--the costs it now seeks to recover from Lumbermens. I cannot conclude, however, based on the record before me, that Liberty will be unable to do so.

IV.

For the foregoing reasons, Lumbermens' motion for summary judgment is denied.

ENTER ORDER:

_____
**Elaine E. Bucklo**
United States District Judge

Dated: July 25, 2008